**No. 2016-1677**

# In the
# United States Court of Appeals
## for the Federal Circuit

UNIVERSAL REMOTE CONTROL, INC.,

*Appellant,*

v.

UNIVERSAL ELECTRONICS, INC.,

*Appellee.*

Appeal from the United States Patent and Trademark Office,
Patent Trial and Appeal Board in No. IPR2014-01146.

## BRIEF OF APPELLEE
## UNIVERSAL ELECTRONICS, INC.

JAMES J. LUKAS, JR.
ERIC J. MAIERS
MATTHEW J. LEVINSTEIN
GREENBERG TRAURIG, LLP
77 W. Wacker Drive, Suite 3100
Chicago, IL 60601
Telephone: (312) 456-8400
Facsimile: (312) 456-8435

*Counsel for Appellee*

 

## CERTIFICATE OF INTEREST

Counsel for Appellee Universal Electronics Inc. certifies the following:

1.     The full name of every party or *amicus* represented by us is:

*Universal Electronics Inc.*

2.     The names of the real party in interest represented by us is:

*Universal Electronics Inc.*

3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

*None*

4.     The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

*Greenberg Traurig, LLP: Eric J. Maiers, James J. Lukas, Jr., Matthew J. Levinstein*

September 30, 2016

/s/ Eric J. Maiers
James J. Lukas, Jr.
Eric J. Maiers
Mathew J. Levinstein
GREENBERG TRAURIG, LLP
77 West Wacker Drive, Ste. 3100
Chicago, IL  60601
Telephone:  (312) 456-8400
Facsimile:  (312) 456-8435

i

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................iv

I.    STATEMENT OF RELATED CASES .........................................1

II.   JURISDICTIONAL STATEMENT .............................................1

III.  STATEMENT OF THE ISSUES ................................................1

IV.  STATEMENT OF THE CASE ...................................................1

    A.    Background To The '207 Patent .........................................1

    B.    The Challenged Claims Of The '207 Patent .........................4

    B.    The Board's Decision Upholding The Validity Of Challenged Claims 13 To 15 ..........................................................7

        1.    The Board's Findings Regarding The '207 Patent ....................7

        2.    The Board's Claim Construction Of "Configuration Of The Entertainment Device".........................................9

        3.    The Board's Findings Regarding The Dubil Prior Art Reference ...............................................................12

            a.    The Board's Factual Findings Regarding The Content Of Dubil ..........................................13

            b.    The Board Found That Dubil Does Not Anticipate Claims 13-15 Of The '207 Patent.................15

V.    SUMMARY OF THE ARGUMENT ..........................................18

VI.  ARGUMENT.........................................................................19

    A.    Standard Of Review ......................................................19

    B.    The Board Correctly Upheld The Validity Of Claims 13-15 ...........21

        1.    The Board Correctly Construed "Configuration Of The Entertainment Device".............................................21

            a.    The Challenged Claims And The Specification Support The Board's Construction of "Configuration Of The Entertainment Device".............21

ii

b.    URC Fails To Read The Intrinsic Evidence As A Whole And Ignores The Express Claim Language..........................................................................25

c.    The Board Correctly Construed "Configuration Of The Entertainment Device".......................................26

2.    Substantial Evidence Supports The Board's Conclusion That Dubil Does Not Anticipate Challenged Claims 13-15 ..........................................................................28

a.    Dubil Does Not Disclose A "Configuration Of The Entertainment Device" ...........................................28

b.    The Board Correctly Concluded That Dubil Does Not Meet The "Access And Use" Limitation Of The Challenged Claims Because Dubil's VCR Does Not "Access And Use" Anything ........................................................................29

c.    The Board Correctly Concluded That Dubil Does Not Disclose The Downloading Limitation Of Claim 13. ..................................................................33

d.    URC Waived Its Right To Challenge The Validity Of Claim 15 ......................................................35

VII.    CONCLUSION...............................................................................36

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Cuozzo Speed Tech., LLC v. Lee*,
    __ S. Ct. __, 2016 WL 3369425 (June 20, 2016)..........................................26

*Glaverbal Societe Anonyme v. Northlake Marketing & Supply, Inc.*,
    45 F.3d 1550 (Fed. Cir. 1995) ......................................................20

*In re Am. Acad. Of Sci. Tech. Ctr.*,
    367 F.3d 1359 (Fed. Cir. 2004) ....................................................19

*In re Robertson*,
    169 F.3d 743 (Fed. Cir. 1999) ................................................21, 30

*In re Suitco Surface, Inc.*,
    603 F.3d 1255 (Fed. Cir. 2010) ....................................................20

*Interactive Gift Express, Inc. v. Compuserve, Inc.*,
    256 F.3d 1323 (Fed. Cir. 2001) ....................................................25

*Lucent Tech., Inc. v. Gateway, Inc.*,
    525 F.3d 1200 (Fed. Cir. 2008) ....................................................25

*Novosteel S.A. v. United States*,
    284 F.3d 1261 (Fed. Cir. 2002). ..............................................19, 35

*Pfizer, Inc. v. Teva Pharm., USA, Inc.*,
    429 F.3d 1364 (Fed. Cir. 2005) ....................................................26

*PPC Broadband, Inc. v. Corning Optical Communications RF*,
    815 F.3d 747 (2016) ....................................................................27

*Teva Pharmaceuticals USA, Inc. v. Sandoz, Inc.*,
    135 S. Ct. 831 (2015)............................................................. 19-20

**Statutes & Other Authorities:**

37 C.F.R. § 42.100(b) ........................................................................19

MPEP § 2111 ....................................................................................19

## I.    STATEMENT OF RELATED CASES

Universal Electronics Inc. ("UEI") does not dispute Universal Remote Control, Inc.'s ("URC") statement.  (*See* Appellant URC's Brief ("Brief") at vii.)

## II.    JURISDICTIONAL STATEMENT

UEI does not dispute URC's statement.  (*See* Brief at 1.)

## III.    STATEMENT OF THE ISSUES

1.    Whether the Board correctly construed "configuration of the entertainment device" as "information stored in memory in the entertainment device that can be accessed and used to configure the entertainment device."

2.    Whether the Board correctly held that U.S. Patent Application No. US 2003/0120831 by Dubil *et al*. ("Dubil") does not anticipate Claims 13-15 of U.S. Patent Number 8,243,207 (the "'207 patent").

## IV.    STATEMENT OF THE CASE

### A.    Background To The '207 Patent

The '207 patent is entitled "System and Method for Activity Based Configuration of an Entertainment System."  (A30.)  The applicant filed the '207 patent application on September 29, 2009.  (A30.)  The '207 patent issued on August 14, 2012. (A30.) The '207 patent contains 16 claims.  (A42-44.)  The '207 patent contains 5 independent claims, *i.e.*, Claims 1, 3, 12, 13, 14.  (A42-43.)  The Board instituted *inter partes* review ("IPR") on Claims 13-15 (the "Challenged Claims").

1

The Challenged Claims are generally directed to methods for configuring an audio visual entertainment device that is in communication with a plurality of devices for an activity. (A42-44.) The configuration methods of the '207 patent are "activity based" in which the configuration is tied to a particular activity of interest to a user of a home entertainment system. Example activities include: watch a movie, play a game, watch TV, listen to music, etc. (A38-39.) A controlling device, *e.g.*, a remote control, may include activity keys corresponding to an individual activity.

For example, as shown in Figure 1 of the '207 patent, the entertainment device, *e.g.*, AV receiver 200, may be connected to a plurality of other devices. The controlling device 100, e.g., the remote control, can transmit signals to the entertainment device and the plurality of other devices connected thereto.



(A31, FIG. 1; A38.) Figure 2 of the '207 patent, reproduced in part below, shows an example of a controlling device 100 with activity keys 200.

2



(A32, FIG. 2.)  Different activities may use different devices as their input source and audio visual output destinations.  For example, in the "Play game" activity, the input source may be game console 110, and the AV output destination may be TV 114 and speakers 116.  Alternatively, to watch a movie, the input source may be DVD player 106, and the AV output destination may be projector 118 and speakers 116.  By pressing an activity key, the home entertainment system is setup to perform the selected activity.

The claimed advantage of the '207 patent is a method comprising "a cooperative effort between [an] AV receiver[, or other entertainment device,] and an associated universal controlling device such as a remote control in which activation of an activity key or button on the controlling device results in transmission of a signal to the AV receiver[, or other entertainment device,] to initiate certain previously defined configuration actions…."  (A38, 1:38-43.)

3

**B.**    **The Challenged Claims Of The '207 Patent**

Challenged Claim 13 of the '207 patent reads as follows:

A method for configuring an audio visual entertainment device in communication with a plurality of devices for an activity, comprising:

> associating a command value corresponding to an activity key of a controlling device with a configuration of the entertainment device, the configuration of the entertainment device comprising at least one of the plurality of devices being used as an audio visual input source device for the entertainment device and at least one of the plurality of devices being used as an audio visual output destination device for the entertainment device; and

> causing the entertainment device to access and use the configuration associated with the command value corresponding to the activity key of the controlling device in response to the entertainment device receiving from the controlling device a signal which includes the command value corresponding to the activity key of the controlling device;

> wherein the configuration of the entertainment device is downloaded into the entertainment device from a computing device in communication with the entertainment device and wherein a configuration of the controlling device in which an activation of one or more command keys of the controlling device will cause the controlling device to communicate commands to the one or more of the audio visual source device and the audio visual output destination device is downloaded into the controlling device from a computing device in communication with the controlling device.

(A43, Claim 13.)

Claim 13 of the '207 patent recites a method to configure an audio visual

entertainment device in communication with a plurality of devices for an activity.

4

(A43, Claim 13.)  A controlling device, *e.g.*, a remote control, has an "activity key" (that has a corresponding command code) associated with a configuration of the entertainment device.  (A43, Claim 13.)  The configuration of the entertainment device includes at least one of the audio visual input source devices, *e.g.*, a DVD player, and at least one of the audio visual output destination devices, *e.g.*, a projector, a TV, or speakers.  (A43, Claim 13.)  In response to a signal sent from the controlling device, the entertainment device accesses and uses the configuration corresponding to the selected activity key.  (A43, Claim 13.)

The configuration of the entertainment device is downloaded into the entertainment device from a computing device in communication with the entertainment device.  (A43, Claim 13.)  A configuration of the controlling device is downloaded into the controlling device from a computing device in communication with the controlling device.  (A43, Claim 13.)  The configuration of the controlling device permits the controlling device to communicate commands to the audio visual source devices and the audio visual output destination devices upon activation of one or more keys of the controlling device.  (A43, Claim 13.)

Challenged Claim 14 of the '207 patent reads as follows:

A method for configuring an audio visual entertainment device in communication with a plurality of devices for an activity, comprising:

receiving at the entertainment device from a controlling device a configuration request signal, wherein the configuration request

5

signal includes a command value corresponding to an activity key of a controlling device

causing the command value corresponding to the activity key of the controlling device included in the configuration request signal to be automatically associated with a configuration of the entertainment device wherein the configuration of the entertainment device comprises at least one of the plurality of devices being used as an audio visual input source device for the entertainment device and at least one of the plurality of devices being used as an audio visual output destination device for the entertainment device; and

causing the entertainment device to access and use the configuration associated with the command value corresponding to the activity key of the controlling device in response to the entertainment device subsequently receiving from the controlling device a command signal which includes the command value corresponding to the activity key of the controlling device.

(A43, Claim 14.)  Challenged Claim 14 is similar in scope with Claim 13, with the exception that Claim 14 does not recite the "downloading" wherein clause at the end of Claim 13.  (A43 (*compare* Claim 13 *with* Claim 13).)

Challenged Claim 15 of the '207 patent reads as follows:

The method as recited in claim 14, comprising [sic] causing the entertainment device to display in a display associated with the entertainment device, in response to receiving the configuration request signal, a graphical user interface for allowing a user to select at least one of the plurality of devices to be used in the configuration for the entertainment device.

(A43-44, Claim 15.)

Claim 15 of the '207 patent recites the method of Claim 14, but adds

an additional step in which the entertainment device displays in an

associated display a graphical user interface that permits the user to select

from the plurality of devices to be used as an input or output device within a

particular configuration of the entertainment device.  (A43-44, Claim 15.)

**B.     The Board's Decision Upholding The Validity Of Challenged Claims 13 To 15.**

**1.     The Board's Findings Regarding The '207 Patent**

The Board found that the '207 patent relates to the configuration of a multi-

input and/or multi-output home entertainment system.  (A2 (citing A38, 1:31-33).)

"The invention routes the outputs and inputs of the various components of an

audio/visual ('AV') system though one central device, such as an AV receiver, that

is referred to generically as the 'entertainment device.'"  (A3 (citing A30, Abstract;

A38, 1:34-36; A42, 9:17-22; A 43, Claim 13).)

The Board made several factual findings regarding how the entertainment

device obtains and utilizes "configuration" data to perform the routing function

noted above.  (A3 ("A personal computer is used to generate activity configuration

settings.") (citing A41, 8:19-67).)  The Board found that configuration data is

downloaded from a personal computer to the entertainment device and that

"[a]ctivity configuration parameters are stored in memory of the entertainment

device for future use in configuration of the home entertainment system when an

indicated activity is requested." (A3 (citing A42, 9:1-8; A40, 6:39-41).)

"Thereafter, the entertainment device serves as a central switching point for

content streams in a home entertainment system." (A3 (citing A42, 9:13-49).)

The Board also made factual findings regarding how the invention of the

'207 patent initiates a configuration of the entertainment device. The Board

explained that once a configuration is stored on the entertainment device, the

remote control can send a signal to the entertainment device to initiate the

configuration. (A3 (citing A38, 1:37-45).) By way of example, the Board

considered Figure 1, which illustrates a variety of input and output audio visual

devices. (A 4 (citing A38, 2:27-32).)



The Board noted that "AV receiver 102 (the entertainment device) switches the

input stream" to various audio visual output devices. (A 4-5 (citing A38, 2:33-

38).)

### 2.    The Board's Claim Construction Of "Configuration Of The Entertainment Device"

The Board construed "configuration of the entertainment device" to mean "information stored in memory in the entertainment device that can be accessed and used to configure the entertainment device."  (A16.)  The Board began the claim construction analysis by examining the claims of the '207 patent.

Regarding Claim 13, the Board found that the "configuration of the entertainment device" relates to three steps of the claimed method:

- "In the first step, the method associates a command value of a controlling device activity key with a *configuration of the entertainment* device. … Such configuration includes at least one input device and at least one output device."  (A12 (citing A43, Claim 13).)

- "In the second step of the method, the *configuration* is accessed and used by the entertainment device."  (A12 (citing A43, Claim 13).)

- "The third step of the method specifies that the *configuration of the entertainment device* is downloaded *into the entertainment device* from a computing device."  (A12 (citing A43, Claim 13).)

Regarding Claim 14, the Board found that the "configuration of the entertainment device" relates to three steps of the claimed method:

- "In the first step, the entertainment device receives a *configuration request* signal that includes a controlling device activity key command value." (A12 (citing A43, Claim 14).)

- "In the second step, there is an association between the command value and a *configuration of the entertainment* device. … The configuration includes at least one input device and at least one output device."  (A12-13 (citing A43, Claim 14).)

9

- "In the third step, the entertainment device *accesses and uses* the configuration." (A13 (citing A43, Claim 14).)

Having considered the Challenged Claims[1] of the '207 patent, the Board turned to the Specification of the '207 patent. According to the Board, "the Specification discloses that activation of an activity key on the controlling device results in transmission of a signal to the entertainment device to 'initiate certain previously defined configuration actions.'" (A13 (quoting A38, 1:40-43).) The '207 patent also describes the entertainment device as "includ[ing] a control processor 400 coupled to a memory 402" that "stores executable instructions to control operation of the entertainment device." (A13 (citing A39, 4:51-56; A40, 5:19-23).) The Board also noted that the Specification discloses a method in which a personal computer generates command values and associated configurations. (A13 (citing A41, 8:19-67).) After the personal computer generates the command values and associated configurations, the configurations are downloaded into the entertainment device. (A13 (citing A42, 9:1-8).)

---

[1] Claim 15 depends from Claim 14: "The method recited in claim 14, comprising causing the entertainment device to display in a display associated with the entertainment device, in response to receiving the configuration request signal, a graphical user interface for allowing a user to select at least one of the plurality of devices to be used in the configuration for the entertainment device." (A43-44.)

The Board also made the following findings based on the Specification relating to the entertainment device's access and use of the "configuration of the entertainment device":

- "Thereafter, 'the entertainment device *accesses and uses the configuration associated with the command value* corresponding to the activity key of the controlling device.' … The entertainment device can 'access and use' such configuration, in part, because it has memory that stores executable instructions that are intended to control the operation of the entertainment device." (A15 (citing A30, Abstract; A39, 4:19-30).)

- "Thus, before it is physically 'configured,' the entertainment device stores executable instructions in memory to control the various electronic components within the entertainment device." … In other words, *after* the entertainment device is configured, it exhibits a *configuration of the entertainment device*. However, *before* it is configured, the entertainment device stores in memory executable instructions and data ('*the final configuration*') that is associated with an activity key command. … It stores the configuration information 'for future use.' … The entertainment device then later accesses and 'uses' the configuration. … The memory in the entertainment device may store a plurality of sets of such executable instructions, each set of which also may be considered to be a *configuration of the entertainment device*." (A15-16 (citing A40, 5:43-48, 6:36-43; A30, Abstract).)

In view of the intrinsic evidence, the Board concluded that the claims and the Specification of the '207 patent use the term "configuration of the entertainment device" as "an entity or construct that can be 'downloaded' from a personal computer to an entertainment device" and "that can be 'access[ed] and use[d].'" (A14 (citing A43, Claim 13).)

The Board then consulted a dictionary to assist with its construction of the term "configuration of the entertainment device." The Board found that "the plain

11

English language dictionary meaning of 'configuration' is 'the arrangement of the

parts of something'" and that the computer science definition of "configuration"

"refers to the particular choice of hardware items and their interconnection that

makes up a particular computer system."  (A14 (citing

http://thefreedictionary.com/configuration (last accessed November 27, 2015)).)

Applying these dictionary definitions, the Board found the following:

- "Under the common English language definition, a *configuration of the entertainment system*, as a whole, would refer to the arrangement and interconnection of the entertainment device with its various input source and output destination devices."  (A14.)

- "Similarly, a *configuration of the entertainment device* would refer to an arrangement internal to the entertainment device that would allow the entertainment device to connect to and communicate with input and output devices."  (A14.)

Ultimately, the Board concluded that "configuration of the entertainment

device" referred to "information stored in memory in the entertainment device that

can be accessed and used to configure the entertainment device."  (A16; A16

(citing A43, Claim 13; A40, 6:38, 6:41).)

### 3.    The Board's Findings Regarding The Dubil Prior Art Reference

The Board made numerous factual findings regarding the teachings of Dubil

and why it does not anticipate the Challenged Claims in its Final Written Decision.

In particular, the Board found that Dubil does not meet the "configuration of the

entertainment device" limitation, as required by all Challenged Claims, the "access

and use" limitation of Claim 13, or the downloading the configuration of the entertainment device into the entertainment device from a computing device limitation.

### a.    The Board's Factual Findings Regarding The Content Of Dubil

The Board found that "Dubil discloses a remote control device that provides commands based on the configuration of components in an AV system."  (A17 (citing A696, Abstract).)  The Board then described the AV system depicted in Figure 1 of Dubil.  (A17 (citing A700, ¶ 17).)  "Remote control device 150 provides for remote control of some or all of the components 110-116."  (A17-18.)



The Board also explained how the Dubil system operates.  "In operation, the system 100 may receive audio-video information from satellite receiver 115 and provide the video to television 110 and the audio to audio amplifier 111.  …  At

another point in time, system 100 may provide audio-video information from

VCR[2] 113, and provide both the video and the audio information to television

110." (A18.)

The Board further explained how a user of Dubil's system selects inputs and

outputs to be used in the system. "An 'activity set' associates select system

functions to particular components to support a particular user activity. … Thus,

although multiple components of a system may include an audio output signal, an

activity set identifies which particular component in the system provides the audio

output of the system." (A18 (citing A700, ¶ 18).)

The Board further described Dubil's "activity manager," which is used to

either create or invoke an activity set. "Dubil discloses an activity manager 510

that has access to a database of user configurations and activity sets 520 and a

database of control codes 530." (A19 (citing A701, ¶ 30).)



---

[2] Notably, Dubil's VCR 113 is the alleged "entertainment device" of Dubil.

"Dubil's activity manager 510 receives user input, via a user interface 512, and provides control codes to a remote control device 150 via control interface 514. … The database disclosed in paragraph 30 may be distributed among a variety of storage devices and storage systems." (A19 (citing A701, ¶ 30).) The Board then explained how a user can use the "user interface" of Dubil to invoke an activity set. (A19-20 (citing A701, ¶ 31).) Finally, the Board explained how a user can use the "user interface" of Dubil to create an activity set. (A20 (citing A702, ¶ 37).)

### b.     The Board Found That Dubil Does Not Anticipate Claims 13-15 Of The '207 Patent

The Board found that Dubil does not disclose a "configuration of the entertainment device" and therefore cannot associate a remote control activity key command value with a configuration of the entertainment device. (A23.) The Board did not identify any "persuasive evidence that Dubil's VCR has memory that stores executable instructions and data in the form of a '*configuration of the entertainment device*' that is downloaded from a computer and is accessed and used as claimed." (A23.)

The Board also concluded that Dubil does not meet the "access and use" limitation of Claim 13 simply because "activation of an activity key invokes an activity, and the activity set is stored and retrieved." (A 23.) According to the Board, in Dubil, "[w]hen the user identifies a preferred activity, the remote control communicates commands to each system component corresponding to the activity.

15

… The remote control also is configured so that different control functions for various devices are mapped to keys on the remote control." (A23-24 (citing A699-700, ¶9, ¶ 21).)[3]  However, "[c]onfiguring a remote control by mapping keys on the remote control to components of a home entertainment system is not the same as storing a *configuration of the entertainment device* in the entertainment device and then accessing and using the configuration by transmitting a command value from the remote control." (A24.)

The Board also concluded that Dubil's disclosure of data being stored on a variety of storage devices does not satisfy the "access and use" limitation. (A24 (citing A700-702, ¶¶ 19, 30, 37).)  The Board's factual findings regarding what Dubil does **not** disclose support the Board's conclusion:

> Dubil does not disclose storing activity set information in the VCR (Dubil's 'entertainment device').  Moreover, Dubil does not disclose storing, in the entertainment device (VCR 113), a *configuration of the entertainment device* comprised of a set of executable instructions stored in memory in the entertainment device and that is accessed and used to configure the internal components of the entertainment device in response to receipt of a signal with a command value corresponding to such configuration.  In summary, at most, Dubil discloses storing activity set information on a device that is configured to provide activity set information (compiled code) *to the remote control device*. It does not disclose storing, in the entertainment device, executable instructions to configure the internal components of the entertainment

---

[3] "For example, if the user desires to watch a satellite TV broadcast, the user presses the 'watch/record satellite broadcast' activity key on the remote control. … The remote control is then configured to associate the channel up and down keys with the satellite receiver, the scanning keys (e.g., fast-forward) with the VCR, and the volume controls to the television." (A24 (citing A700, ¶21).)

device and then accessing and using such executable instructions as required by claim 13.

(A24-25.)

The Board further determined that Dubil does not teach downloading the configuration of the entertainment device into the entertainment device from a computing device.  At most, Dubil discloses (according to the Board) that "a user may use a personal computer to interface with a configuration application program" that "collects information from the user regarding the configuration of the user's equipment and then creates one or more data sets that can be downloaded 'to the equipment' to effect the configuration."  (A25 (citing A702, ¶¶ 34; 36, 37.)   Here again, the Board relied on Dubil's silence to support its conclusion:

> There is no explicit disclosure in Dubil that VCR 113 functions as the "storage device at the user location" as identified in paragraph 37 of Dubil.  The mere possibility that it might function as a storage device is insufficient to establish anticipation either explicitly or inherently. …  Furthermore, the information that is downloaded and stored in Dubil relates to compiled command codes for activity sets, not a *configuration of the entertainment device* as required by claim 13. The information that is downloaded and stored in Dubil's storage device is provided to the remote control device on demand. …   This is different from the limitation in claim 13 where a *configuration of the entertainment device* is downloaded into the entertainment device from a computing device where it can be accessed and used by the entertainment device to configure its internal components in response to receipt of a signal from the remote control containing an associated command value.

(A26 (citing A702, ¶37; A43, Claim 13).)

17

In view of the above, the Board concluded that Dubil does not anticipate Claim 13.  For the same reasons, the Board concluded that Dubil does not anticipate Claim 14, which is "substantially similar in scope to claim 13."  (A27.) Claim 15 depends from Claim 14, and it is axiomatic, as the Board noted, that Dubil cannot anticipate dependent Claim 15 because it does not anticipate independent Claim 14.  (A28.)

## V.    SUMMARY OF THE ARGUMENT

Substantial evidence supports the Board's conclusion that Dubil does not anticipate each of Challenged Claims 13-15 of the '207 patent.  The Board correctly construed "configuration of the entertainment device" in light of the claims and specification to mean "information stored in memory in the entertainment device that can be accessed and used to configure the entertainment device."  The Board's construction reflects the Challenged Claims' requirements that the entertainment device "access and use" the configuration of the entertainment device.  That can only happen if the "configuration of the entertainment device" is "information stored in memory in the entertainment device that can be accessed and used to configure the entertainment device."

Regardless of what construction the Court ultimately adopts for "configuration of the entertainment device," however, Dubil cannot anticipate the Challenged Claims.  The alleged entertainment device of Dubil is a VCR.  Dubil

18

does not disclose that its VCR can access and use *anything*, much less a "configuration of the entertainment device." Nor should it; Dubil is a remote-centric reference. The remote control of Dubil maps a set of commands to the keys of the Dubil remote control based on the selected user activity. The remote control can then transmit remote control signals to the appropriate target appliance(s). Dubil does not, however, teach the claimed methods of the entertainment device-centric '207 patent. The '207 patent describes how to configure the claimed "entertainment device" in communication with a plurality of component devices.[4]

The Board correctly concluded that URC has not met its burden to demonstrate that any of Claims 13, 14, and/or 15[5] are invalid in view of Dubil, and the Court should affirm the validity of those claims.

## VI.    ARGUMENT

### A.    Standard Of Review

UEI agrees with URC that the Board must give claims their broadest reasonable interpretation. *In re Am. Acad. Of Sci. Tech. Ctr.*, 367 F.3d 1359, 1364 (Fed. Cir. 2004); MPEP § 2111; 37 C.F.R. § 42.100(b). UEI also agrees that *Teva*

---

[4] Dubil also does not anticipate several other limitations of the Challenged Claims, as discussed herein.

[5] URC does not address whether Dubil discloses the elements of dependent Claim 15. As a result, URC has waived its anticipation argument with respect to Claim 15. *See Novosteel S.A. v. United States*, 284 F.3d 1261, 1274 (Fed. Cir. 2002).

*Pharmaceuticals USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 841 (2015), controls the Court's claim construction analysis.

However, UEI disagrees that claim construction in this case is a "pure legal conclusion reviewable under a *de novo* standard" as URC claims.  (Brief at 35.) URC is wrong that "the Board asserted that its claim construction rested ***solely*** on the intrinsic evidence."  (Brief at 35 (citing A12) (emphasis added).)  While the Board noted that its "claim construction analysis will focus primarily on the intrinsic record," the Board also relied on several dictionary definitions to aid its construction of "configuration of the entertainment device."  (A14.)  The Board's factual determinations relating to the definition of "configuration" are reviewable for substantial evidence.  *See Teva*, 135 S. Ct. at 841.

UEI agrees that anticipation is a question fact reviewable under the substantial evidence standard.  *In re Suitco Surface, Inc.*, 603 F.3d 1255, 1259 (Fed. Cir. 2010).  "Substantial evidence is something less than the weight of the evidence but more than a mere scintilla of evidence … and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal citations and quotations omitted).

A prior art reference anticipates a method claim only if it discloses all of the steps of the method.  *See, e.g., Glaverbal Societe Anonyme v. Northlake Marketing & Supply, Inc.*, 45 F.3d 1550, 1554 (Fed. Cir. 1995) ("Anticipation requires

20

identity of the claimed process and a process of the prior art; the claimed process, including each step thereof, must have been described or embodied, either expressly or inherently, in a single reference.").

Establishing anticipation through inherency is a high-bar. "To establish inherency, the extrinsic evidence must make clear that the missing descriptive matter is ***necessarily present*** in the thing described in the reference." *In re Robertson*, 169 F.3d 743, 745 (Fed. Cir. 1999) (emphasis added). "Inherency, however, may not be established by probabilities or possibilities. The mere fact that a certain thing may result from a given set of circumstances is not sufficient." *Id.*

### B.    The Board Correctly Upheld The Validity Of Claims 13-15

#### 1.    The Board Correctly Construed "Configuration Of The Entertainment Device"

##### a.    The Challenged Claims And The Specification Support The Board's Construction of "Configuration Of The Entertainment Device"

The Board correctly construed "configuration of the entertainment device" as "information stored in memory in the entertainment device that can be accessed and used to configure the entertainment device." (A16.)

The claim construction analysis begins, as it must, with the claims of the '207 patent. Claims 13-15 all require that the ***entertainment device*** "access and use" the configuration of the entertainment device. (A43-44, Claims 13-15; A12-

21

13.)  The entertainment device can "access and use" the configuration of the entertainment device only if that configuration is tangible, not an abstract "system state," or the like, that is not physically embodied.  If the latter were true, then there would be nothing for the entertainment device to access and use.  Thus, the configuration of the entertainment device must be "information."  And, of course, that information must be stored in the memory of the entertainment device in order for the entertainment device to "access and use" it.  Put differently, the entertainment device cannot access and use information stored on a different device without first transferring that information to its own memory.[6]

The Specification of the '207 patent is in accord.  The Abstract and Summary of the Invention—neither of which are limited to exemplary embodiments of the '207 patent—both confirm that the entertainment device must access and use the configuration of the entertainment device, which requires that

---

[6] The Challenged Claims do not explicitly define "configuration of the entertainment device" as URC argues.  (Brief at 43-44.)  Claim 13 states that the "configuration of the entertainment device compris[es] at least one of the plurality of devices being used as an audio visual input source device for the entertainment device and at least one of the plurality of devices being used as an audio visual output destination device for the entertainment device."  (A43, claim 13.)  True; but that is not a definition (or proper construction) of "configuration of the entertainment device."  (Brief at 43.)  Rather, it is a ***description*** of what the configuration of the entertainment device must include—a point that UEI does not contest, and that the Board's claim construction does not contradict.  This language merely specifies the type of information that must be stored in the entertainment device.  URC's argument that the claims explicitly define "configuration of the entertainment device" is a red-herring, and the Court should ignore it.

the configuration be a concrete thing, *i.e.*, information stored in the entertainment device's memory.  (*See e.g.*, A30, Abstract ("When the entertainment device receives from the controlling device a signal which includes the command value corresponding to the activity key of the controlling device, the entertainment device accesses and uses the configuration associated with the command value corresponding to the activity key of the controlling device."); A38, Summary of the Invention at 1:37-45 ("The inventive methods described herein comprise a cooperative effort between the AV receiver and an associated universal controlling device such as a remote control in which activation of an activity key or button on the controlling device results in transmission of a signal to the AV receiver to initiate certain previously defined configuration actions…."); *see also* A15-16.)

Other exemplary embodiments contained within the Specification confirm the accuracy of the Board's construction.  (*See, e.g.*, A39, 4:51-56 ("an exemplary AV receiver 102 may include, as needed for a particular application, a control processor 400 coupled to a memory 402 which may comprise any combination of ROM, RAM, and/or non-volatile read write memory; video and audio processing sections 404, 406"); A40, 5:19-23 ("As will be understood by those skilled in the art, some or all of the memory 402 may include executable instructions that are intended to be executed by the processor 400 to control the operation of the AV receiver 102"), 6:36-43 ("Once all user selections have been made, at step 512 the

activity configuration parameters may be finalized and stored in AV receiver memory 402 for future use in configuring the home entertainment system when the indicated activity is called for, e.g., the final configuration is stored and associated with the received key command value corresponding to the activity key that was activated at the start of the configuration process."), A41-42, 8:19-9:8; A15 ("The entertainment device can 'access and use' such configuration, in part, because it has memory that stores executable instructions that are intended to control the operation of the entertainment device."); A15-16 ("The entertainment device stores in memory executable instructions and data … that is associated with an activity key command. … It stores the configuration information 'for future use.' … The entertainment device then later accesses and 'uses' the configuration.").)[7]

For these reasons, the Board correctly construed "configuration of the entertainment device" to mean "information stored in memory in the entertainment device that can be accessed and used to configure the entertainment device." (A16.)

---

[7] The dictionary definition considered by the Board also supports its construction of "configuration of the entertainment device."   A configuration is "an arrangement of parts of something."  (A14 (citing http://www.thefreedictionary.com).)  In the context of the Challenged Claims, a configuration of the entertainment device must, as the Board concluded, refer to an arrangement *internal* to the entertainment device that permits the entertainment device to connect to and communicate with input and output devices, *i.e.*, to access and use the configuration.  (A14.)

**b.    URC Fails To Read The Intrinsic Evidence As A
Whole And Ignores The Express Claim Language.**

URC claims that the Board's construction of "configuration of the
entertainment device" imports limitations from the Specification into the claims.
But URC ignores the claims to reach that conclusion.  (*See* Brief at 46-50.)  The
Challenged Claims require that the ***entertainment device*** access and use the
configuration (of the entertainment device).  (A43-44, claims 13-15.)  Alternative
embodiments that disclose the storage of configuration information in devices
other than the entertainment device, including those cited by URC, might well be
unclaimed.  *See, e.g., Lucent Tech., Inc. v. Gateway, Inc.*, 525 F.3d 1200, 1215-16
(Fed. Cir. 2008) ("[W]here we conclude that the claim language is unambiguous,
we have construed the claims to exclude all disclosed embodiments.").  Rather
than acknowledge that possibility, URC elevates the Specification over the
Challenged Claims' express language requiring that the ***entertainment device***
access and use the configuration of the entertainment device.

URC's approach defies black-letter claim construction law acknowledged by
the Board and URC itself: "[a] claim construction analysis begins with, and is
centered on, the claim language itself."  (Brief at 36 (citing A12 (citing *Interactive
Gift Express, Inc. v. Compuserve, Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001)).)
The Board's construction of "configuration of the entertainment device" does not

import limitations from Specification; rather, it holds true to the unambiguous language of Challenged Claims 13-15.

### c.     The Board Correctly Construed "Configuration Of The Entertainment Device"

The Board never adopted its preliminary, broad definition of "configuration of the entertainment device" that the Board considered in its Institution Decision[8] "encompass[ed] AV system configurations which do not require active switching between input sources and output destinations at the AV Receiver/Entertainment Device."  (A200.)  Moreover, the Board's Institution Decision and its findings therein are not appealable.  *See Cuozzo Speed Tech., LLC v. Lee*, __ S.Ct. __, 2016 WL 3369425, at *9  (June 20, 2016) ("[w]here a patent holder merely challenges the Patent Office's "determin[ation] that the information presented in the petition ... shows that there is a reasonable likelihood" of success "with respect to at least 1 of the claims challenged," § 314(a), or where a patent holder grounds its claim in a statute closely related to that decision to institute inter partes review, § 314(d) bars judicial review.").  Thus, the Court should not entertain URC's arguments

---

[8] The Board was not obligated to adopt either of the preliminary definitions for "configuration of the entertainment device" set forth in its Institution Decision. (A10; A200 (*citing Pfizer, Inc. v. Teva Pharm., USA, Inc.*, 429 F.3d 1364, 1377 (Fed. Cir. 2005) (court may engage in a rolling claim construction, in which the court revisits and alters its interpretation of the claim terms as its understanding of the technology evolves)).)

regarding whether the Board should have adopted a construction that the Board's Institution Decision asked the parties' to consider.

Nevertheless, the Board's preliminary definition of "configuration of the entertainment device" does not comply with the "access and use" requirement of the Challenged Claims.  An entertainment device is not accessing and using anything, much less configuration data, if the input and output devices are merely "selectively power[ed] on and power[ed] off," without the entertainment device performing any switching operations of its own.  (A200.)  Accordingly, that cannot be the correct construction.

URC's claim that the Board injected an additional limitation into the claims by requiring that the entertainment device engage in active switching is a straw man.  URC omits a critical aspect of the "broadest reasonable interpretation" standard from its argument—"[w]here a claim term is susceptible of two constructions, under the BRI standard, the Board should adopt the broader of the two constructions"—namely, that the broader construction must be "reasonable." (Brief at 38 (citing *PPC Broadband*, 815 F.3d at 741-42).)  The entertainment device must actively switch between input sources and output destinations to give meaning to the "access and use" limitations in Claims 13-15.  Any construction that does not require such active switching, including the Board's broader proposed definition from its Institution Decision, renders superfluous the "access

and use" requirement and is therefore not reasonable.  The Board correctly rejected

its preliminary proposed definition of "configuration of the entertainment device"

as unreasonably broad and inconsistent with the other claim language in favor of

the correct construction it adopted in its Final Written Decision.

> ## 2.    Substantial Evidence Supports The Board's Conclusion That Dubil Does Not Anticipate Challenged Claims 13-15

The Board's construction of "configuration of the entertainment device,"

right or wrong, does not change the final result: Dubil does not anticipate

Challenged Claims 13-15.  Notably, URC fails to set forth a *prima facie* case of

anticipation in its opening brief.  URC does not identify where or how Dubil

discloses each and every limitation of Challenged Claims 13-15.  (*See generally*

Brief at 51-59.)

> ### a.    Dubil Does Not Disclose A "Configuration Of The Entertainment Device"

Dubil does not disclose "information stored in memory in the entertainment

device that can be accessed and used to configure the entertainment device."

Specifically, Dubil does not disclose that its VCR (the alleged entertainment

device) has memory that can store information for future access and use by the

VCR.  (*See generally* A696-703.)  That conclusion is supported by substantial

evidence, and URC has not met its burden to disturb the Board's findings on

appeal.  As the Board noted: "Petitioner provides ***no persuasive evidence that***

***Dubil's VCR has memory that stores executable instructions and data in the form of a "configuration of the entertainment device"*** that is downloaded from a computer and is accessed and used as claimed."  (A23 (emphasis added); *see also* A24.[9])  The "configuration of the entertainment device" limitation is present in every challenged claim.  (A43-44, Claims 13-15.)  Thus, Dubil cannot anticipate the Challenged Claims.

Of course, because Dubil does not disclose a "configuration of the entertainment device," it cannot associate a remote control activity key command value with a configuration of the entertainment device, as required by the Challenged Claims.[10]

> **b.    The Board Correctly Concluded That Dubil Does Not Meet The "Access And Use" Limitation Of The Challenged Claims Because Dubil's VCR Does Not "Access And Use" Anything**

Dubil cannot anticipate Claims 13-15 regardless of the construction of "configuration of the entertainment device."  The Challenged Claims require that the entertainment device ***access and use*** the configuration of the entertainment device.  (A43, Claims 13-15.)  Dubil's alleged entertainment device, a VCR, does

---

[9] "Moreover, Dubil does not disclose storing, in the entertainment device (VCR 113), a *configuration of the entertainment device* comprised of a set of executable instructions stored in memory in the entertainment device and that is accessed and used to configure the internal components of the entertainment device in response to receipt of a signal with a command value corresponding to such configuration."
[10] For these same reasons, Dubil cannot anticipate Claims 14-15.

not "access and use" anything.  (*See generally* A696-703.)  Dubil is a remote-centric entertainment system, in which a generic VCR is identified as one of the controlled AV components.  The '207 patent, on the other hand, requires the entertainment device to access and use configuration data in a very specific way that Dubil does not teach.

The Board expressly rejected URC's inherency-based argument that Dubil meets the "access and use" limitation.  (A20 ("Petitioner contends that a person of ordinary skill in the art would have understood that, in order to provide video and audio information to the television, VCR 113 must inherently access and use the configuration associated with the sent command value"), 23 ("Petitioner concludes that, since activation of an activity key invokes an activity set, and the activity set is stored and retrieved, the ["access and use"] limitation is met.  …  This argument is not persuasive."), 24.)  "To establish inherency, the extrinsic evidence must make clear that the missing descriptive matter is ***necessarily present*** in the thing described in the reference."  *In re Robertson*, 169 F.3d 743, 745 (Fed. Cir. 1999) (emphasis added).  URC fails to meet this high bar.

The Board rejected URC's inherency argument in view of the following teachings of Dubil:

> Dubil's remote control has one or more activity keys.  Ex. 1005 ¶ 9.
> When the user identifies a preferred activity, the remote control
> communicates commands to each system component corresponding to
> the activity.  *Id.*  The remote control also is configured so that

different control functions for various devices are mapped to keys on the remote control. *Id.* ¶ 21. For example, if the user desires to watch a satellite TV broadcast, the user presses the "watch/record satellite broadcast" activity key on the remote control. *Id.* The remote control is then configured to associate the channel up and down keys with the satellite receiver, the scanning keys (e.g., fast-forward) with the VCR, and the volume controls to the television. *Id.*

(A23-24.) In view of Dubil's teachings, the Board concluded:

> Configuring a remote control by mapping keys on the remote control to components of a home entertainment system **is not the same** as storing a *configuration of the entertainment device* in the entertainment device **and then accessing and using the configuration** by transmitting a command value form the remote control.

(A24 (bold and underline added).) Dubil's VCR does not access and use anything, let alone a "configuration of the entertainment device," regardless of how the Court ultimately construes that term.

Moreover, URC ignores the plain language of Claims 13-15 when it states "[b]ecause the claim requires only that the 'configuration of the entertainment' device be accessed and used, without specific limitations on the activity and use, it does not matter that Dubil's activity set information is sent to the remote control." (Brief at 52, 53[11].) URC is wrong because the claims do place a specific limitation on the activity and use of the configuration, namely, that the ***entertainment device***

---

[11] "Under the proper construction, there is no limitation on where the configuration of the entertainment device is stored or accessed from."

must be the component that accesses and uses the configuration. (A43, Claim 13 ("causing the entertainment device to access and use the configuration…").)

URC's characterization of Dubil confirms that Dubil cannot meet the "access and use" limitation of Claim 13. According to URC, "Dubil FIG. 4 clearly shows an activity set (or configuration instructions) which is accessed and used *by the user* by pressing corresponding commands *from the remote control*, such as to select the cable or satellite input, or to select the TV or surround sound audio output." (Brief at 57 (citing A698, FIG. 4) (emphasis added), 58 ("Additionally, the Board admitted that Dubil generally discloses *using a remote control to access and use* different inputs and outputs for an activity set." (emphasis added)).)[12] URC admits that *the user* accesses and uses the activity set (as opposed to a "configuration of the entertainment device") *through the remote*. The alleged entertainment device of Dubil, *i.e.*, the VCR, is not the component performing the "accessing and using" step as required by Claim 13.[13]

---

[12] URC is also wrong that Dubil's VCR engages in switching in accordance with the Board's second construction of "configuration of the entertainment device" from the Board's Institution Decision. (*See* Brief at 55-56.) As the Board noted, "Petitioner cites to no explicit disclosure in Dubil where the VCR actively switches between a plurality of inputs and a plurality [of] outputs. We have reviewed Dubil and find no such explicit disclosure. Neither do we find that Dubil discloses active switching of the VCR inherently." (A22.)

[13] For these same reasons, Dubil cannot anticipate Claims 14-15.

Substantial evidence supports the Board's conclusion that Dubil does not

disclose the "access and use limitation of Claims 13-15, and URC has not proven

otherwise.

> ### c.    The Board Correctly Concluded That Dubil Does Not Disclose The Downloading Limitation Of Claim 13.

Substantial evidence supports the Board's conclusion that Dubil does not

disclose "wherein the configuration of the entertainment device is downloaded into

the entertainment device from a computing device in communication with the

entertainment device…." (A43, Claim 13.)  At most, Dubil discloses that

"compiled command codes corresponding to each activity set may be stored at the

third party's Internet site, or downloaded to a storage device at the user location,

such as to a set-top box (STB 116 of FIG. 1) that is configured to provide the

compiled code to the remote control device." (A702, ¶ 37.)

The Board correctly found the following:

> ***There is no explicit disclosure in Dubil that VCR 113 functions as
> the "storage device at the user location"*** as identified in paragraph 37
> of Dubil.  The mere possibility that it might function as a storage
> device is insufficient to establish anticipation either explicitly or
> inherently.  *See Agilent Tech.*, 567 F.3d at 1383.  Furthermore, ***the
> information that is downloaded and stored in Dubil relates to
> compiled command codes for activity sets, not a configuration of the
> entertainment device as required by claim 13***.  The information that
> is downloaded and stored in Dubil's storage device is provided to the
> remote control device on demand.  Ex. 1005 ¶ 37.  This is different
> from the limitation in claim 13 where a *configuration of the
> entertainment device* is downloaded into the entertainment device
> from a computing device where it can be accessed and used by the

> entertainment device to configure its internal components in response
> to receipt of a signal from the remote control containing an associated
> command value.

(A26 (emphases added).)

Dubil's disclosure is insufficient for two reasons.  First, Dubil never ties the "storage device at the user location" to VCR 113.  Second, all that is being stored is, as the Board noted, compiled command codes for activity sets, ***not*** a configuration of the entertainment device, as required by Claim 13.

URC has failed to show that the Board's conclusion is not supported by substantial evidence.  In particular, URC's claim that Dubil's VCR is a "storage device" capable of storing a configuration of the entertainment device is a gross mischaracterization of Dubil.  (*See* Brief at 52, 54-55, 59.)  Dubil refers to a VCR as a "storage device" in the context of describing an example activity set for recording a satellite broadcast.  (A700, ¶ 19.)  Of course, a user can record (or "store") a satellite broadcast on a VCR cassette tape or "Tivo" device.  (*See id.*)  But that is different from saying that a VCR is a storage device capable of storing a configuration of the entertainment device in the VCR's memory.  Dubil is devoid of any teaching to that effect, and the Court should reject URC's strained reading of Dubil.

#### d.    URC Waived Its Right To Challenge The Validity Of Claim 15

URC does not address whether Dubil discloses the elements of dependent Claim 15. As a result, URC has waived its anticipation argument with respect to Claim 15. A party's failure to address an issue in its opening appeal brief constitutes waiver. *Novosteel S.A. v. United States*, 284 F.3d 1261, 1274 (Fed. Cir. 2002).

Regardless, Dubil does not disclose "causing the entertainment device to display in a display associated with the entertainment device, in response to receiving the configuration request signal, a graphical user interface for allowing user to select at least one of the plurality of devices to be used in the configuration for the entertainment device." (A44, Claim 15.) ***First***, Dubil does not disclose generating any display ***in response to*** the entertainment device receiving the configuration request signal. (*See generally* A696-703.) ***Second***, the display of Dubil is not "associated with the entertainment device" but rather, the only graphical user interface disclosed in Dubil is that of a personal computer (*i.e.*, user interface 512 of activity manager 510), which has absolutely no connection or association to the entertainment device. "In a preferred embodiment of this invention, the activity manager 510 provides a menu-driven application for the creation of the user's system configuration and each user activity set via the remote control device 150, and also provides an application for the creation of the

35

configuration and activity sets via a personal computer." (A702, ¶ 35.) Indeed,
Dubil expressly confirms that its PC is not associated with its VCR or any other
AV equipment. (A697, FIG. 2; A702 ¶ 34 ("By using a personal computer to
obtain the user information, *the audio-video equipment of a user's system need
not be burdened with providing a user interface for receiving and processing the
user's information to create the configuration*." (emphasis added)).) ***Third***,
Dubil's VCR, as the alleged entertainment device, must cause the display, (A44,
Claim 15,) but Dubil does not disclose that the personal computer displays
anything at the VCR's behest. (*See generally* A696-703.) For at least these
additional reasons, Dubil does not anticipate challenged Claim 15.[14]

## VII.  CONCLUSION

For the foregoing reasons, the Court should affirm the Board's holding that
Dubil does not anticipate Claim 13. Claim 14 is similar in scope to Claim 13 with
the exception that Claim 14 does not include the "downloading" limitation of
Claim 13. (*Compare* A43, Claim 13 *with* Claim 14; A27.) Thus, the Court should
also affirm the Board's holding that Dubil does not anticipate Claim 14. Finally,
because Claim 15 depends from Claim 14, the Court should also affirm the
Board's holding that Dubil does not anticipate Claim 15.

---

[14] The Board did not consider the limitations of dependent Claim 15 in its Final
Written Decision. Accordingly, in the event that the Court agrees with URC, the
Court should remand the question of whether Dubil anticipates Claim 15 to the
Board for consideration.

September 30, 2016                    Respectfully submitted,

                                     /s/ Eric J. Maiers
                                     James J. Lukas, Jr.
                                     Eric J. Maiers
                                     Mathew J. Levinstein
                                     GREENBERG TRAURIG, LLP
                                     77 West Wacker Drive, Ste. 3100
                                     Chicago, IL  60601
                                     Telephone:  (312) 456-8400
                                     Facsimile:  (312) 456-8435

                                     *Counsel for Appellee Universal Electronics Inc.*

## CERTIFICATE OF COMPLIANCE WITH FRAP 32(A)(7)(B)

This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B). This brief contains 7,625 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii). This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 28.1(e) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). This brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in fourteen (14) point Times New Roman font.

Respectfully submitted,

*/s/ Eric J. Maiers*
Eric J. Maiers

## <u>CERTIFICATE OF SERVICE</u>

I, Gary Y. Chyi, being duly sworn according to law and being over the age of 18, upon my oath deposes and states that:

Counsel Press was retained by GREENBERG TRAURIG, LLP, Attorneys for Appellee Universal Electronics, Inc., to print this document. I am an employee of Counsel Press.

On September 30, 2016, GREENBERG TRAURIG, LLP, authorized me to electronically file the foregoing Brief of Appellee Universal Electronics, Inc., with the Clerk of the Federal Circuit using the CM/ECF System, which will serve e-mail notice of such filing on the following attorneys:

Peter H. Kang
Sidley Austin LLP
1001 Page Mill Road
Palo Alto, CA 94304
pkang@sidley.com

Theodore W. Chandler
Sidley Austin LLP
555 West Fifth Street, Suite 4000
Los Angeles, CA 90013
tchandler@sidley.com

Constantine L. Trela Jr.
Sidley Austin LLP
Bank One Plaza
1 South Dearborn Street
Chicago IL 60603
ctrela@sidley.com

Anna M. Weinberg
Sidley Austin LLP
1501 K Street, NW
Washington DC 20005
aweinberg@sidley.com

Douglas A. Miro
Ostrolenk Faber LLP
1180 Avenue of the Americas
7th Floor
New York NY 10036
dmiro@ostrolenk.com

*/s/  Gary Y. Chyi*
Gary Y. Chyi